IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JUN DAI, | ) | CIVIL NO. 17-00271 KJM |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANTS |
| vs. | ) | CITY AND COUNTY OF |
| | ) | HONOLULU, ROBERT J. |
| JASON NIKAIDO, GUY INOUYE, | ) | KRONING, GUY INOUYE, AND |
| CHIEF OF WASTEWATER | ) | JASON NIKAIDO'S MOTION TO |
| DIVISION, DEPT. OF DESIGN | ) | DISMISS FIRST AMENDED |
| AND CONSTRUCTION, CITY AND | ) | COMPLAINT FILED ON APRIL 24, |
| COUNTY OF HONOLULU, | ) | 2018 |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS CITY AND COUNTY OF HONOLULU,
ROBERT J. KRONING, GUY INOUYE, AND JASON NIKAIDO'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT FILED ON APRIL 24, 2018

On April 24, 2018, Plaintiff Jun Dai ("Plaintiff") filed a First Amended Complaint ("FAC") against the following defendants: the City and County of Honolulu ("the City"); the City, Department of Design and Construction, Wastewater Division ("the Department"); Robert J. Kroning ("Director Kroning"), in his official capacity as Director of the Department of Design and Construction; and Department employees, Jason Nikaido ("Nikaido") and Guy Inouye ("Inouye") (collectively, "Defendants"). Plaintiff asserts the following six counts in his FAC: Count I, Title VII - Discrimination on the Basis of National Origin

against the City and the Department; Count II, Title VII – 42 U.S.C. § 2000e-2(a)(1) Title VII Hostile Work Environment ("Hostile Work Environment Claim") against the City and the Department; Count III, Title VII – Retaliation against the City and the Department; Count IV - 42 U.S.C. § 1981 against Inouye and Nikado; Count V - 42 U.S.C. § 1983 against Inouye and Nikado; and Count VI – 42 U.S.C. § 1985(3) ("Civil Conspiracy Claim") against Defendants.

On May 14, 2018, Defendants filed a motion to dismiss Counts II and VI of the FAC ("Motion to Dismiss"), which are respectively, Plaintiff's Hostile Work Environmental Claim and Plaintiff's Civil Conspiracy Claim. *See* ECF No. 52. Plaintiff filed his Opposition on June 5, 2018. *See* ECF No. 61. Defendants filed their Reply on June 7, 2018. *See* ECF No. 62.

The Court held a hearing on the Motion to Dismiss on June 25, 2018. Plaintiff appeared pro se. Mitsuko Takahashi, Esq., appeared on behalf of Defendants. After careful consideration of the arguments by the parties, the record in this case, and the relevant case law, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion.

BACKGROUND

Plaintiff was born in China and is of Chinese ancestry. *See* ECF No. 42 at 2, ¶ 1. Plaintiff was a Civil Engineer V for the Department from February 2002 to August 2015. *See id*. at 5 ¶ 15, 17 ¶ 57. Plaintiff filed his original complaint on

June 8, 2017, which this Court dismissed with leave to amend on December 30, 2017. *See* ECF No. 32. On the same day, this Court referred the case to the Civil Pro Bono Panel. *See* ECF No. 33. On February 23, 2018, this Court appointed pro bono counsel to represent Plaintiff for the limited purpose of drafting an amended complaint. *See* ECF No. 37. Plaintiff, by and through his appointed pro bono counsel, filed his FAC on April 24, 2018. *See* ECF No. 42. The Court terminated pro bono representation on May 3, 2018. *See* ECF No. 50. Defendants filed their Motion to Dismiss on May 14, 2018. *See* ECF No. 52.

Defendants argue in their Motion to Dismiss that Count II (Hostile Work Environment Claim) and Count VI (Civil Conspiracy Claim) are too vague, conclusory, and devoid of the factual allegations required to state a plausible claim for relief under their respective theories. ECF No. 52-1 at 5. Defendants thus argue that these counts fail to satisfy even the most basic pleading requirements of Federal Rule of Civil Procedure 8. *Id*. In addition, Defendants argue that the FAC improperly names as parties: (1) the Department, which is not *sui juris*, *i.e.,* not independent from the City; and (2) Director Kroning, an agent of the City, which is already a named party. *See* ECF No. 52 at 3. Defendants thus move this Court to dismiss Counts II and VI of the FAC with prejudice, and to dismiss the Department and Director Kroning from this action with prejudice.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits this Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." This Court must, however, take all allegations of material fact in the complaint as true, and must construe the complaint in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Id.* "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must provide the grounds of his entitlement to relief, which must consist of more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . . [f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Golden State Warriors*, 266 F.3d at 988.

DISCUSSION

I. Hostile Work Environment

"Under Title VII of the Civil Rights Act of 1964, it is 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race.'" *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) (citing 42 U.S.C. § 2000e–2(a)(1) (2003)). Encompassed in this prohibition of discrimination is the prohibition of "the creation of a hostile work environment, which violates Title VII's guarantee of 'the right to work in an environment free from discriminatory intimidation, ridicule, and insult.'" *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). "Courts have long recognized that a workplace in which racial hostility is pervasive constitutes a form of discrimination." *Woods v. Graphic Commc'ns*, 925 F.2d 1195, 1200 (9th Cir. 1991).

To state a Title VII claim based on a hostile work environment, a plaintiff must allege (1) unwelcome, (2) verbal or physical conduct based on a protected characteristic that was (3) sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005). Defendants argue that even when

viewed in the light most favorable to Plaintiff, the wrongful conduct alleged was not severe, or pervasive.

Defendants proffer the following allegations from Plaintiff's complaint, which Defendants contend are insufficient to meet the "severe or pervasive" requirement of a hostile work environment claim:

> 34. Between 2008 to approximately 2011, . . . [e]ach time [Plaintiff] requested to be considered for a managerial position, Inouye would respond by shaking his head in disapproval[.]
>
> 36. After Nikaido's promotion, . . . . Nikaido responded brusquely something to the effect of, "What if only Japanese qualify?"
>
> 37. After his promotion to CE VI and on a near weekly basis, Nikaido harassed [Plaintiff] by issuing numerous negative reprimands against him containing trivial or fabricated accusations[.]
>
> 38. . . . . Nikaido took away [Plaintiff]'s responsibility for a project, claiming there was insufficient time for the project to be done[.]
>
> 39. Nikaido and Inouye repeatedly criticized [Plaintiff]'s lack of English fluency[.]
>
> 40. . . . . Nikaido and Inouye requested that [Plaintiff] go "back to school" to take an English course at the community college. . . . Nikaido and Inouye forwarded one of [Plaintiff]'s many emails to an attorney within Corporation Counsel . . . and asked the attorney to critique [Plaintiff]'s English proficiency[.]
>
> 41. On one occasion in 2014, Nikaido lectured [Plaintiff] for reading a Chinese language Singapore-published article. . . . Nikaido questioned why [Plaintiff] was reading in Chinese when he should be reading in English, asking him, "Why are you reading in Chinese again?" Nikaido directed [Plaintiff] to read in English[.]

> 42. In or around January 2015, Nikaido refused to grant [Plaintiff]'s request to take medical leave to see a dental specialist in China[.]
>
> 49. In February 2015, Nikaido placed [Plaintiff] on suspension for one day effective February 6, 2015 for questioning [Nikaido's] calculation of the width for a newly designed pipe[.]

ECF No. 52-1 at 12-13 (alterations in original) (quoting ECF No. 42 at 10-15).

Defendants contend that the foregoing wrongful conduct alleged was not severe. Defendants argue that none of these allegations evince "actual outrageous, extreme, or otherwise severe verbal or physical conduct that a reasonable person would find hostile or abusive." *Id*. at 13. Defendants also argue that none of the remarks were about Plaintiff's national origin. In support of their contentions, Defendants rely on the Ninth Circuit decisions in *Vasquez v. Los Angles*, 349 F.3d 634 (9th Cir. 2003), *as amended* (Jan. 2, 2004), and *Manatt v. Bank of America, NA*, 339 F.3d 792 (9th Cir. 2003).

The courts in *Manatt* and *Vasquez* did indeed find that the conduct alleged by the plaintiffs in the respective cases were neither severe nor pervasive enough to alter the conditions of the plaintiffs' employment. These cases were decided, however, in connection with a motion for summary judgment. At this stage of the litigation, Plaintiff need not prove all the elements of his claim. Plaintiff is required only to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To state a claim to relief that is plausible on its face regarding conduct sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive work environment, Plaintiff must allege enough facts that demonstrate that Plaintiff's work environment was both "subjectively and objectively hostile." *McGinest*, 360 F.3d at 1113. That is, Plaintiff must allege conduct that "a reasonable person would find hostile or abusive, and one that [Plaintiff] in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Contrary to Defendants' arguments, Plaintiff need not show that any remarks were made *about* his national origin; only that he was subjected to such conduct *based* on his national origin. The Court finds Plaintiff has alleged sufficient facts to allow this Court to draw the reasonable inference that Defendants' conduct was severe and pervasive enough to have created a hostile work environment, and that such conduct was based on his national origin.

First, Plaintiff alleges that Nikaido criticized Plaintiff for reading in Chinese, and that Nikaido and Inouye repeatedly criticized Plaintiff's lack of English fluency, told Plaintiff to go "back to school" to take an English course, and forwarded an email to an attorney within Corporation Counsel to critique Plaintiff's English. *See* ECF No. 42 at 12-13. Although none of these comments were directly about Plaintiff's national origin, accepting the facts within the FAC

as true, it is not difficult to draw the reasonable inference that Nikaido's and Inouye's conduct were based on Plaintiff's national origin.

Second, according to the FAC, Nikaido harassed Plaintiff by issuing numerous negative reprimands against him containing trivial or fabricated accusations on a near weekly basis. The FAC also alleges that for the first time in June of 2015, Plaintiff's performance evaluation was returned as substandard in all categories, even those that were not applicable to Plaintiff. Finally, the FAC alleges that Plaintiff reported Nikaido's conduct to Human Resources. These allegations are sufficient to establish that the conduct was unwelcome, altered the conditions of Plaintiff's employment, and created an abusive work environment.

Third, the Court notes that the allegations in the FAC are stronger than those alleged in the cases proffered by Defendants in the summary judgment cases, *Manatt* and *Vasquez*. In *Manatt*, the plaintiff alleged that she overheard jokes in which the phrase, "China man" was used, that on a couple of occasions, the plaintiff's co-workers and supervisors directed racially insensitive "humour" at plaintiff, and that on one instance, co-workers pulled their eyes back with their fingers in an attempt to imitate or mock the appearance of Asians. *Manatt*, 339 F.3d at 798. In *Vasquez*, the primary basis of the plaintiff's claim arose from statements that plaintiff had "a typical Hispanic macho attitude" and that plaintiff

"should consider transferring to the field because 'Hispanics do good in the field.'" *Vasquez*, 349 F.3d at 643.

In this case, Plaintiff alleges that Nikaido: repeatedly criticized Plaintiff's lack of English fluency; told Plaintiff he should be reading in English, and not Chinese; and sought to humiliate him by sending Plaintiff's email to an attorney to critique his English proficiency. The Ninth Circuit has held that to determine if an environment is sufficiently hostile or abusive to violate Title VII, a court should "look at 'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).

Considering all the circumstances, the Court finds that the facts alleged in Plaintiff's FAC show that Plaintiff perceived the work environment to be hostile, and that a reasonable person in the Plaintiff's position would have perceived it as hostile. *See, e.g., Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005) (holding that a reasonable jury also could have found that the community's treatment of the plaintiff both subjectively and objectively severe or pervasive when she received hostile comments based on her race, accent, and national origin, and where the mayor expressed displeasure with having a Hispanic postmaster or

criticized her accented English); *Cha v. Kaiser Permanente*, No. C-14-4672-EMC, 2015 WL 3758287, at *7 (N.D. Cal. May 6, 2015) (noting that "accent-based discrimination can be actionable under Title VII"); *c.f. Akouri v. State of Florida Dept. of Transp.*, 408 F.3d 1338, 1348 (11th Cir. 2005) (deeming comments about an accent as "direct evidence of discrimination" in an employment discrimination case). Accordingly, the Court DENIES Defendants' motion to dismiss Count II of Plaintiff's FAC.

## II. Civil Conspiracy

Plaintiff alleges in his FAC that all Defendants conspired to deprive him and other non-Japanese employees of the equal protection of the laws or equal privileges under the law. ECF No. 42 at 23. Plaintiff also alleges that in furtherance of Defendants' conspiracy, Defendants have "refused to promote or hire non-Japanese engineers, including [Plaintiff], into positions of management within the City and the Department. . . ." *Id*. In addition, Plaintiff alleges that Defendants "have harassed, issued unwarranted negative evaluations and criticism of [Plaintiff's] work, and have suspended, failed to promote and transfer, and terminated [Plaintiff], thereby injuring his person and/or property and depriving him of his rights." *Id*. at 23-24. Plaintiff alleges that his national origin was the motivating factor in "Defendants' decisions to harass, suspend and terminate [Plaintiff], and/or refusal to promote and transfer [Plaintiff]." *Id*. at 24.

11

"42 U.S.C. § 1985(3) provides a cause of action against state or private conspiracies." *I.H. by & through Hunter v. Oakland Sch. for Arts*, 234 F. Supp. 3d 987, 993 (N.D. Cal. 2017). Under § 1985(3), injured parties may seek recovery where two or more persons in any State conspire to deprive the party, either directly or indirectly, "of the equal protection of the laws, or of equal privileges and immunities under the laws":

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). "The elements of a § 1985(3) claim are: (1) the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; (2) an act in furtherance of the conspiracy[;] and (3) a resulting injury." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000). The Court finds that Plaintiff's allegations are insufficient to show the existence of a conspiracy.

"[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012); *see also Johnson v. California.*, 207

F.3d 650, 655 (9th Cir. 2000) ("A mere allegation of conspiracy without factual specificity is insufficient."), *overruled on other grounds by Johnson*, 543 U.S. 499, (quoting *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988)). "A section 1983 civil rights conspiracy requires the 'combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means[.]'" *S.V. by & through Valencia v. Delano Union Elementary Sch. Dist.*, 1:17-cv-00780-LJO-JLT, 2017 WL 3479009, at *3 (E.D. Cal. Aug. 14, 2017) (quoting *Survine v. Cottle*, No. CV F 12-1453 LJO-JLT, 2013 WL 103576, *9 (E.D. Ca. Jan. 8, 2013)). Thus, the principal element of a section 1983 civil rights conspiracy claim is the existence of "'an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.'" *Id.* (quoting *Cottle*, 2013 WL 103576, at *9); *see also Ward v. E.E.O.C.*, 719 F.2d 311, 314 (9th Cir. 1983) ("To prove a conspiracy . . . [Plaintiff] had to show an agreement or 'meeting of the minds' to violate his constitutional rights.").

Plaintiff alleges a number of actions taken against him by Nikaido, Inouye, and Director Kroning. Plaintiff does not, however, specifically allege that any of these parties "conspired" against him, *i.e.* Plaintiff fails to provide facts demonstrating the existence of any connection or agreement between any of these parties. It is thus unclear whether some or all of the individuals named in the FAC

13

conspired against him to deprive him of this rights.  In addition, Plaintiff does not allege any conduct from which this Court could draw the reasonable inference that there was an agreement or "meeting of the minds" between any of the defendants to deprive Plaintiff of a particular right.  *See Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997) ("The plaintiff has failed to allege that there was ever an agreement or 'meeting of the minds' between any of the defendants to keep him underemployed because of his membership in a protected class; such a 'meeting of the minds' is an essential element of a conspiracy claim.").  Plaintiff's FAC thus lacks any allegations that would support the existence of a conspiracy.  *See e.g. Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998) (finding that the record contained several facts indicating that the individual in question had knowledge of, discussed, and planned the deprivation of rights with others).

Accordingly, Plaintiff's Civil Conspiracy claim fails "to give fair notice and to enable the opposing party to defend itself effectively."  *AE*, 666 F.3d at 637.  The Court thus GRANTS Defendants' motion to dismiss the Civil Conspiracy claim with leave to amend.  *See id*. at 636 ("A district court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities."); *see also Oakland Sch. for Arts*, 234 F. Supp. 3d at 991 ("The Ninth Circuit has 'repeatedly held that a district court should grant leave to amend even if no request

to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'") (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted)).

If Plaintiff chooses to amend his complaint, Plaintiff may submit a second amended complaint curing the deficiencies of his Civil Conspiracy Claim on or before **July 16, 2018**. The Court cautions Plaintiff, however, that Plaintiff cannot rely upon or incorporate by reference any portion of his FAC in his second amended complaint. Plaintiff's second amended complaint will not be considered collectively with his FAC and must stand alone as the operative complaint in the action. Plaintiff's second amended complaint must therefore, (1) cure the deficiencies of his Civil Conspiracy Claim discussed in this Order, (2) be designated as the "Second Amended Complaint," and (3) must restate all of the other facts and claims from his FAC. In other words, Plaintiff must submit a Second Amended Complaint that is substantially identical to the FAC, except for any facts and legal theories related to his Civil Conspiracy Claim.

The Court does not grant Plaintiff leave to add any additional claims or legal theories. The Court's leave is limited to Plaintiff amending the allegations related to his Civil Conspiracy Claim. If Plaintiff chooses not to amend his Civil Conspiracy Claim allegations, the First Amended Complaint will serve as the operative complaint, and Count VI will remain dismissed.

III. Improperly Named Parties

A. The Department

Defendants contend that the Department is not a proper party to the instant action because it is not an independent entity and does not have the legal capacity to sue or be sued. ECF No. 52-1 at 19. Defendants request that the Department be dismissed with prejudice from all of the claims in the FAC. *Id.*

The Court finds that the Department is not a separate legal entity apart from the City. Pursuant to article VI, chapters 1 and 5 of the Revised Charter of Honolulu (2017 ed.), the Department of Design and Construction is under the supervision of the managing director of the City. Departments placed under the supervision of the managing director of the City are not independent legal entities. Any charges against these departments would be charged against the City. *Meyer v. City & Cty. of Honolulu*, 6 Haw. App. 505, 507 n.1, 729 P.2d 388, 390 n.1, *aff'd in part, rev'd in part on other grounds*, 69 Haw. 8, 731 P.2d 149 (1986) ("[T]he [Honolulu Police Department ("HPD")] is a department placed under the supervision of the managing director of the City and County of Honolulu . . . Not being an independent legal entity, the HPD should have been dismissed as a separate defendant. All liability charged against the HPD would be charged against defendant City."); *see also N Gr. LLC v. Haw. Cty. Liquor Comm'n*, 681 F. Supp. 2d 1209, 1234 (D. Haw. 2009) ("In the absence of explicit steps to grant the

commission the capacity to be sued, this Court concludes that the legislature did not intend for the Liquor Commission to be subject to suit. It lacks the capacity to be sued and will be dismissed from this action accordingly."); *City & Cty. of Honolulu v. Toyama*, 61 Haw. 156, 161, 598 P.2d 168, 172 (1979) (holding that departments of the executive branch of the City, supervised by the City's managing director, do not constitute legal entities which are separate and apart from the City).

Plaintiff has named the City as a party in his FAC. Accordingly, the Court GRANTS Defendants' request to dismiss the Department from this action without leave to amend.

B. Director Kroning

Defendants argue that because Plaintiff is suing Director Kroning in his official capacity only, naming Director Kroning in this action is a redundant suit against the City. ECF No. 52-1 at 19. Defendants contend that where both the City and a government entity has been named as parties in an action, "it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant." *Id.* at 19-20 (quoting *Luke v. Abbott*, 954 F. Supp. 202, 204 (C.D. Cal. 1997)). The Court agrees.

"[I]t is no longer necessary or proper to name as a defendant a particular local government officer acting in official capacity." *Alexander v. City & Cty. of*

*Honolulu Police Dep't*, Civil No. 06-00595 JMS-KSC, 2007 WL 2915623, at *5 (D. Haw. Sept. 28, 2007) (quoting *Abbott*, 954 F. Supp. at 204); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under [*Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)], local government units can be sued directly for damages and injunctive or declaratory relief."). Plaintiff names both Director Kroning and the City. Defendants have requested that Director Kroning be dismissed from this action. The Court GRANTS Defendants' request to dismiss Director Kroning from this action. *See Alexander*, 2007 WL 2915623, at * 5 ("Because both [the official-capacity officer] and the City and County are named, the court DISMISSES the official-capacity officer, leaving the local government entity as the correct defendant."). The Court grants Plaintiff leave, however, to amend his complaint to name Director Kroning, in his individual capacity, in the second amended complaint, and to add any claims Plaintiff may have against Director Kroning in Director Kroning's individual capacity.

CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART DEFENDANTS CITY AND COUNTY OF HONOLULU, ROBERT J. KRONING, GUY INOUYE, AND JASON NIKAIDO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FILED ON APRIL 24, 2018 as follows:

18

1. The Court GRANTS Defendants' motion to dismiss:

 a. Count VI of the FAC- Plaintiff's 42 U.S.C. § 1985 Civil Conspiracy Claim; however, the Court grants Plaintiff leave to amend his complaint with respect to his Conspiracy Claim;

 b. The Department of Design and Construction, Wastewater Division from this action without leave to amend; and

 c. Director Robert Kroning from this action; however, the Court grants Plaintiff leave to amend his complaint to add Director Kroning as a party, in his individual capacity, and to include any claims he has against Director Kroning in his individual capacity.

2. The Court DENIES Defendants' motion to dismiss Count IV of the FAC- Plaintiff's hostile work environment claim.

3. If Plaintiff chooses to: (1) amend his Civil Conspiracy Claim; or (2) add Director Kroning as a party in his individual capacity and add claims against Director Kroning in his individual capacity, Plaintiff must file his second amended complaint no later than **July 16, 2018**. Plaintiff must remove any references to the Department of Design and Construction, Wastewater Division, and Director Robert Kroning, in his official capacity, from the second amended complaint. Plaintiff may not add any additional parties, claims, or theories of liability, unless such party, claim, or theory of liability is related to Director Kroning, in his individual

capacity. In addition, Plaintiff may not rely upon or incorporate by reference any portion of his FAC in the second amended complaint. The second amended complaint must be able to stand alone without reference to the FAC. Any amended complaint must be designated as the "Second Amended Complaint."

4. If Plaintiff does not submit an amended complaint by July 16, 2018, the FAC will serve as the operative complaint, and the following will remain dismissed from this action: (1) Count VI of the FAC; (2) the Department of Design and Construction, Wastewater Division; and (3) Director Kroning, in his official capacity.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, June 25, 2018.



/S/ Kenneth J. Mansfield
Kenneth J. Mansfield
United States Magistrate Judge

CIVIL NO. 17-00271 KJM; *Dai v. Nikaido, et al*; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS CITY AND COUNTY OF HONOLULU, ROBERT J. KRONING, GUY INOUYE, AND JASON NIKAIDO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FILED ON APRIL 24, 2018